WheelbR, J.
Tlie record discloses that the appellant was fined and imprisoned for a contempt committed in refusing to give evidence before the grand jury, from which judgment lie appealed.
The 3d section of the 4th article of the Constitution of the State provides, that “the Supreme Court shall have appellate jurisdiction only, which shall be coextensive with the State; but in criminal cases and in appeals from interlocutory judgments, with such exceptions and under such regulations as the Legislature shall make.”
■ The 1st section of the act regulating appeals to the Supreme Court in criminal cases, (Hart. Dig., art. 4GS,) while it gives the right of appeal generally, makes an express exception of cases of contempt of court. It is as follows : “The defendant to any indictment or prosecution for any criminal offense, in the District Courts of this State, shall have the right of appeal to the Supreme Court, except in cases of contempt of court.”
There can be no question that, under the constitutional provision cited, the Legislature had the power to make tills exception.
The consequence is, that the present being the case of a contempt of court, of a criminal nature, no appeal lies, and no jurisdiction is confided to this court to revise the judgment. (In the case of Ex parte Kearney, (7 Wheat. R., 38; 5 Cond. R., 225,) it was held, that the punishment, by imprisonment, of a witness for a contempt committed in refusing to answer questions, on the ground that his answers would tend to criminate himself, being a criminal case, was not within the appellate jurisdiction of that court. And thej'- refused a habeas corpus, on the ground of a want of jurisdiction — it appearing that the party liad been committed for a contempt by a court of competent jurisdiction. (And see Yarborough v. The State, 2 Tex. R., 519.) “The argument of inconvenience,, *109 >.the court said, has been pressed upon us with great earnestness; but where the law is clear, this argument can be of no avail; and it will, probably, bo found that there are also serious inconveniences on the other side. Wherever ■power is lodged, it may be abused. But this forms no solid objection against its exercise. Confidence must be reposed somewhere; and if there should be an abuse, it will be a public grievance, for which a remedy may be applied by the Legislature, and is not to be devised by courts of justice.” (5 U. S. Cond. R., 228.)
Note 31. — Jordan v. The State, 14 T., 436; Jackson v. The State, 21 T., 668; Casey v. The State, ’26 T., 380; Holman v. Mayor of Austin, 34 T., 668.
The justice of these observations must be acknowledged. We do not intend to intimate that the power confided to the District Court has not been, judiciously and wisely exercised in this instance.
As the question of the. exemption of a witness from answering questions having a tendency to criminate himself has been argued with commendable research by the counsel for the appellant, it is deemed proper to state what we conceive to be the láw on that subject.
The rule was thus expounded by Chief Justice Marshall, in The United States v. Burr, (1 Rob. R., 207, cited in 2 Cow. & H’s Rotes to Phil. Ev., n. 379:) “It is the province of the court to judge whether any direct answer to the question which may be proposed will furnish evidence against the witness. If such answer may disclose a fact which forms a necessary and essential link in the chain of testimony, which would he sufficient to convict him of aiiy •crime, he is not hound to answer it so as to furnish matter for that conviction. In such a case the witness must himself judge what ills answer will be; and if he say on oath that he cannot answer without accusing himself, he cannot he •compelled to answer.”
A similar exposition of the law on the subject was given by Marcy J. in The People v. Mather, (4 Wend., 254,) “ where he (the witness) claims to he excused from answering, because his answer will have a tendency to implicate him in . a crime or misdemeanor, or will expose him to a penalty or forfeiture, then tiie court are to determine whether the answer he may give to the, question can criminate him, directly or indirectly, by furnishing direct evidence ■ of his guilt, or by establishing one of many facts, which together may constitute a chain of testimony sufficient to warrant his conviction, hut which one fact of itself could not produce such result; and if they think the answer may in any way criminate him, they must allow his privilege, without exacting from him to explain how he would he criminated by the answer which the truth •may oblige him to give. If the witness was obliged to show how the effect is produced, 'the protection would at-once be annihilated. The means which lie would be in that case compelled to use to obtain protection would involve ’ the surrender of the very object for the security of which the protection was ■sought-.”
This is conceived to he a true exposition of the rule. But in that case it was ’held that if a prosecution for a crime was, as to the witness, barred by the statute of limitations, he was bound to answer the question, for then he would not ‘ be liable to punishment.
The same principle applies where the witness is exempted by statute from punishment in consequence of his being made a witness. And of his exemp-1 tion by law from penal consequences, it is for the court to determine. Such an exemption is contained in the 71st section of the act of 1848 “concerning •crimes and puuUhmcnts.” (Hart. Dig., art. 577.) And though the answer of a witness, called to testify respecting the offense to which the exemption relates, would tend to inculpate him as apartieipant in the crime, he could ■not refuse to answer; for his participation in the offense could not subject him to punishment.
Being of opinion that the present is a case in which an appeal is not author* ■ized by law, the appeal is dismissed.
Appeal dismissed.,